1  **ROBERT R. HENSSLER, JR.**
   California Bar No. 216165
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   Telephone: (619) 234-8467
4

5  Attorneys for Mr. Navarro

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10                      **(HONORABLE DANA M. SABRAW)**

11 UNITED STATES OF AMERICA,        )    Case No. 08CR1278-DMS
                                    )
12           Plaintiff,             )    Date: May 30, 2008
                                    )    Time: 11:00 a.m
13           v.                     )
                                    )    STATEMENT OF FACTS AND MEMORANDUM
14 WILLIAM NAVARRO,                 )    OF POINTS AND AUTHORITIES IN SUPPORT
                                    )    OF DEFENDANT'S MOTIONS
15           Defendant.             )
                                    )
16 _____ )

17                                    **I.**

18                          **STATEMENT OF FACTS**

19        The following statement of facts is based, in part, on the complaint filed in this case. Mr. Navarro

20 does not accept this statement of facts as his own, and reserves the right to take a contrary position at motion

21 hearings and trial. Mr. Navarro reserves the right to challenge the truth and accuracy of these facts in any

22 subsequent pleadings or during any further proceedings.

23        On April 11, 2008, Customs officers arrested Mr. Navarro at the Calexico Port of Entry. On April

24 23, 2008, the Grand Jury indicted Mr. Navarro for violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) -

25 transportation of illegal aliens and aiding and abetting. He pled not guilty, and these motions follow.

26 //

27 //

28 //

## II.

### MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Mr. Navarro moves for the production of the following discovery.  This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely connected investigative [or other] agencies."  See United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

(1) The Defendant's Statements.  The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant.  Fed. R. Crim. P. 16(a)(1)(A).  The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2)  Arrest Reports, Notes and Dispatch Tapes.  The defendant also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning.  This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained.  Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963).  The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant.  See Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I).

(3) Brady Material.  The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the Government's case.  Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused.  United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

08CR1278-DMS

(4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>.  The Government must produce this information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines.  The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) <u>The Defendant's Prior Record</u>.  The defendant requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(B).

(6) <u>Any Proposed 404(b) Evidence</u>.  The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, under Rule 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(B) at trial. The defendant requests that such notice be given three (3) weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>.  The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(C).

(8) <u>Request for Preservation of Evidence</u>.  The defendant specifically requests the preservation of all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relate to the arrest or the events leading to the arrest in this case.

(9) <u>Tangible Objects</u>.  The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the Government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim. P. 16(a)(2)(c).

(10) <u>Evidence of Bias or Motive to Lie</u>.  The defendant requests any evidence that any prospective Government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.

08CR1278-DMS

(11) <u>Impeachment Evidence</u>.  The defendant requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant.  <u>See</u> Fed R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>, <u>supra</u>.

(12) <u>Evidence of Criminal Investigation of Any Government Witness</u>.  The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(13) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>.  The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(14) <u>Witness Addresses</u>.  The defendant requests the name and last known address of each prospective Government witness.  The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a Government witness.

(15) <u>Name of Witnesses Favorable to the Defendant</u>.  The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged.

(16) <u>Statements Relevant to the Defense</u>.  The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

(17) <u>Jencks Act Material</u>.  The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500.  Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963).  In <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

08CR1278-DMS

(18)  <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any Government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any Government witnesses.

(19)  <u>Agreements Between the Government and Witnesses</u>.  The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability,  between any prospective Government witness and the Government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

(20)  <u>Informants and Cooperating Witnesses</u>.  The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Navarro.  The Government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense.  <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957).  The Government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(21)  <u>Bias by Informants or Cooperating Witnesses</u>.  The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

(22) <u>Government Examination of Law Enforcement Personnel Files</u>.  Mr. Navarro requests that the Government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses, including testifying officers. Mr. Navarro requests that these files be reviewed by the Government attorney for evidence of perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).  The obligation to examine files

arises by virtue of the defense making a demand for their review: the Ninth Circuit in <u>Henthorn</u> remanded for <u>in camera</u> review of the agents' files because the government failed to examine the files of agents who testified at trial. This Court should therefore order the Government to review all such files for all testifying witnesses and turn over any material relevant to impeachment or that is exculpatory to Mr. Navarro prior to trial. Mr. Navarro specifically requests that the prosecutor, not the law enforcement officers, review the files in this case. The duty to review the files, under <u>Henthorn</u>, should be the prosecutor's. Only the prosecutor has the legal knowledge and ethical obligations to fully comply with this request.

(23)  <u>Expert Summaries</u>.  Defendant requests written summaries of all expert testimony that the government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case in chief, written summaries of the bases for each expert's opinion, and written summaries of the experts' qualifications. Fed. R. Crim. P. 16(a)(1)(E).  This request includes, but is not limited to, fingerprint expert testimony.

(24)  <u>Residual Request</u>.  Mr. Navarro intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Mr. Navarro requests that the Government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

**III.**

**THIS COURT SHOULD PRECLUDE THE PROSECUTION FROM PROCEEDING UNDER AN AIDING AND ABETTING THEORY.**

**A.**  **Aiding and Abetting Requires Proof of An Additional Element, Beyond The Elements of the Underlying Offense, and  Thus, This Element Must Be Alleged In the Indictment.**

The Fifth Amendment to the Constitution provides in relevant part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V.  An indictment must allege every essential element of the offense, including implied elements not present in the statutory language. <u>United States v. Du Bo</u>, 186 F.3d 1177, 1179 (9th Cir. 1999); <u>accord</u> <u>Russell v. United States</u>, 369 U.S. 749, 763-64 (1962).  "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." <u>United States v. Hill</u>, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element

1  of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the

2  indictment." Du Bo, 186 F.3d at 1179.

3          The Ninth Circuit has held that "[o]ur circuit law is clear that **aiding and abetting contains an**

4  **additional element of specific intent**, beyond the mental state required by the principal crime." United States

5  v. Sayetsitty, 107 F.3d 1405, 1412 (9th Cir. 1997) (emphasis added); see also United States v. Gaskins, 849

6  F.2d 454, 459 (9th Cir. 1988) (expressly stating that "the elements necessary to convict an individual under

7  an aiding and abetting theory are . . . that the accused had the specific intent to facilitate the commission of

8  a crime by another"). Because a defendant is constitutionally entitled to a grand jury finding on every

9  essential element necessary to convict him, this additional intent element must also be alleged in the

10 indictment before the Government may proceed under an aiding and abetting theory.

11 **B.      The Cases Holding that the "Aiding and Abetting" Theory Is Implied in Every Federal**
   **Indictment Are Not to the Contrary.**

12

13         It is true that the Ninth Circuit has stated in dictum that aiding and abetting is implied in every

14 indictment. See United States v. Armstrong, 909 F.2d 1238 (9th Cir. 1990); Gaskins, 849 F.2d at 1442;

15 United States v. Michaels, 796 F.2d 1112, 1117-1118 (9th Cir. 1986). None of these cases, however,

16 examined the language used in the indictment; they only examined the jury instructions. Accordingly, they

17 do not resolve the question presented here.

18         Because the aiding and abetting statute, 18 U.S.C. § 2, "states a rule of criminal responsibility for

19 acts which one assists another in performing," Nye & Nissen v. United States, 336 U.S. 613, 620 (1949), the

20 acts set forth in section 2 merely describe the **means** of committing an offense. Armstrong, 909 F.2d at 1243;

21 see also United States v. Causey, 835 F.2d 1289, 1292 (9th Cir. 1987); Michaels, 796 F.2d at 1117-1118. Put

22 another way, Armstrong and its antecedents do **not** hold that an indictment may omit the additional intent

23 element required for a conviction under the aiding and abetting theory; they simply recognize that section 2

24 sets forth the **acts** of the defendant that expose him to liability as a principal. Because these cases do not

25 discuss the additional intent element which is necessary to convict a defendant under the aiding and abetting

26 theory, they are inapposite.[1]

27

28         [1]  If section 2 does not require all offense elements to be alleged in the indictment, then it is
   unconstitutional. Congress cannot exempt its statutes from the requirements of the Grand Jury Clause of the

**C.** **Neither the Prosecution Nor The Court May Broaden the Permissible Bases For Conviction Beyond Those Charged In the Indictment.**

Requiring the proof to remain true to the indictment enables the grand jury to protect citizens from the unilateral power of the Government to institute criminal prosecutions. United States v. Miller, 471 U.S. 130, 139 (1985); accord Ex parte Bain, 121 U.S. 1, 10 (1962), overruled on other grounds by United States v. Cotton, 122 S.Ct. 1781 (2002).[2] Accordingly, the Court has held that a district court may not broaden the possible bases for conviction beyond those alleged in the indictment. Stirone v. United States, 361 U.S. 212, 218 & n.3 (1960).

"An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984); United States v. Dipentino, 242 F.3d 1090, 1094 (9th Cir. 2001) (finding constructive amendment where district court instructed jury on work practice standard not alleged in indictment).

Applying these principles here, if the indictment fails to set forth the additional element of specific intent required to convict a defendant under the aiding and abetting theory, then neither the government nor the district court can broaden the indictment to include aiding and abetting as a possible basis for conviction.

**D.** **The Indictment Here Does Not Authorize the Prosecution to Proceed Under an Aiding and Abetting Theory.**

Sayetsitty clearly holds that to convict a defendant under an aiding and abetting theory, the government must prove at least two different intent elements: The defendant must have specifically intended to aid the principal in the commission of the offense, and the defendant must have the requisite intent for the underlying offense. 107 F.3d at 1412. Aiding and abetting clearly requires proof of an additional intent element beyond the intent required by the statute. Id.

---

Fifth Amendment. Thus, if this Court holds that section 2 does not require all elements necessary to convict to be alleged in the indictment, then it must strike this statute down.

[2] Cotton did not overrule Bain, Russell or Stirone. Cotton, 122 S.Ct. at 1785. Indeed, it expressly left this holding of Bain intact. Id. Nor did the Court discuss whether an indictment error is a structural defect or whether such an error affects substantial rights. Id. at 1785-1786. Thus, it does not aid this Court's analysis.

08CR1278-DMS

Here, for example, to convict under an aiding-and-abetting theory, the government needs to prove that the defendant intended to aid a principal in the commission of the offense, in addition to proving the intent elements attributed to the principal. These are distinct elements, and under <u>Hill</u> and <u>DuBo</u>, all of these elements need to be alleged in the indictment. <u>See</u> <u>Du Bo</u>, 186 F.3d at 1179; <u>Hill</u>, 279 F.3d at 741. Because the indictment here failed to allege this additional intent element, this Court may not allow the government to proceed under an aiding and abetting theory. A contrary holding constructively amends the indictment and impermissibly broadens the scope of the charges.

Thus, this Court should preclude the Government from proceeding under an aiding and abetting theory, or in the alternative dismiss the indictment.

**IV.**

## THE COURT MUST SUPPRESS MR. NAVARRO'S STATEMENTS UNDER THE FIFTH AMENDMENT

**A.      *Miranda* Warnings Must Precede Custodial Interrogation.**

The Supreme Court has held that the government may <u>not</u> use statements, whether exculpatory or inculpatory, obtained during custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). The law imposes no substantive duty upon the accused to make any showing other than that the statements were taken while the accused was in custody and subject to interrogation. <u>Id.</u> at 476. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of her freedom of action in any significant way. <u>Id.</u> at 477; <u>see also</u> <u>Orozco v. Texas</u>, 394 U.S. 324, 327 (1969). In <u>Stansbury v. California</u>, 511 U.S. 318 (1994), the Supreme Court stated that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." <u>Id.</u> at 323.

When it takes an accused's statement during custodial interrogation, a heavy burden rests on the government to demonstrate that the accused intelligently and voluntarily waived her privilege against self-incrimination. To satisfy this burden, the prosecution must introduce evidence sufficient to establish "that under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned

1   and the consequences of the decision to abandon it." <u>United States v. Garibay</u>, 143 F.3d 534, 536 (9th Cir.

2   1998) (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)). The Ninth Circuit has stated that "[t]here is a

3   presumption against waiver." <u>Garibay</u>, 143 F.3d at 536.  The standard of proof for a waiver of constitutional

4   rights is high. <u>Miranda</u>, 384 U.S. at 475; <u>see also</u> <u>United States v. Heldt</u>, 745 F.2d 1275, 1277 (9th Cir. 1984)

5   (the burden on the government is great, the court must indulge every reasonable presumption against waiver

6   of fundamental constitutional rights) (citing <u>Johnson v. Zerbst</u>, 304 US 458, 464 (1938)). Finally, it should

7   be noted that, since <u>Miranda</u> rests on a constitutional foundation, <u>see</u> <u>Dickerson v. United States</u>, 530 U.S.

8   428, 438 (2000), ***no law or local court rule relieves the government of its burden*** to prove that Mr. Navarro

9   voluntarily waived the <u>Miranda</u> protections.  <u>Miranda</u>, 384 U.S. at 475.

10          The validity of the waiver depends upon the particular facts and circumstances of the case, and

11  include the background, experience, and conduct of the accused.  <u>Edwards v. Arizona</u>, 451 U.S. 477, 482

12  (1981); <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938); <u>see also</u> <u>Garibay</u>, 143 F.3d at 536; <u>United  States v.

13  Bernard S.</u>, 795 F.2d at 751 ("a valid waiver of <u>Miranda</u> rights depends upon the totality of the circumstances,

14  including the background, experience and conduct of the accused").  In <u>Derrick v. Peterson</u>, 924 F.2d 813 (9th

15  Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a <u>Miranda</u> waiver requires a two prong

16  analysis: the waiver must be both (1) voluntary; and, (2) knowing and intelligent.  <u>Id.</u> at 820.  The

17  voluntariness prong of this analysis "is equivalent to the voluntariness inquiry [under] the [Fifth] Amendment

18  . . . ."  <u>Id.</u>  The knowledge prong mandates an inquiry into whether "the waiver [was] made with a full

19  awareness both of the nature of the right being abandoned and the consequences of the decision to abandon

20  it."  <u>Id.</u> (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)); <u>accord</u> <u>Garibay</u>, 143 F.3d at 436.  Thus,

21  "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal <u>both</u> an uncoerced choice

22  <u>and</u> the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been

23  waived."  <u>Derrick</u> at 820 (quoting <u>Moran v. Burbine</u>, 475 U.S. at 521) (emphasis in original) (citations

24  omitted)).

25          Here, Mr. Navarro was in custody when he was questioned.  Unless and until it shows the agents

26  properly administered the <u>Miranda</u> warnings and obtained a knowing and intelligent waiver from Mr. Navarro,

27  the government cannot use evidence obtained as a result of any custodial interrogation that occurred after Mr.

28  Navarro's arrest.  <u>Miranda</u>, 384 U.S. at 479.

**B.      The Government Bears the Burden of Proving that Mr. Navarro's Alleged Statements Were Made Voluntarily**

Even when the procedural safeguards of <u>Miranda</u> have been satisfied, a defendant in a criminal case is deprived of due process of law if her conviction is founded upon an involuntary confession.  <u>Arizona v. Fulminante</u>, 499 U.S. 279 (1991); <u>Jackson v. Denno</u>, 378 U.S. 368, 387 (1964).  The government bears the burden of proving that a confession is voluntary.  <u>Lego v. Twomey</u>, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. <u>Blackburn v. Alabama</u>, 361 U.S. 199, 208 (1960).  In determining whether a defendant's will was overborne in a particular case, this Court must consider the totality of the circumstances.  <u>Schneckloth</u> at 226; <u>see also</u> <u>United States v. Bautista-Avila</u>, 6 F.3d 1360, 1364 (9th Cir. 1993).  A statement is  involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence."  <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976) (quoting <u>Bram v. United States</u>, 168 U.S. 532, 542-43 (1897)); <u>see also</u> <u>United States v. Tingle</u>, 658 F.2d 1332, 1335 (9th Cir. 1981).

To meet its burden, the government must demonstrate that Mr. Navarro's statement was ***not*** the result of either threats or promises made by the agents, but was made voluntarily.

**C.      This Court Must Conduct An Evidentiary Hearing.**

Accordingly, this Court must conduct an evidentiary hearing to determine whether the government can meet this burden and use Mr. Navarro's statements against him.  18 U.S.C. § 3501.  Since "'suppression hearings are often as important as the trial itself,'" these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.  <u>See</u> <u>United States v. Prieto-Villa</u>, 910 F.2d 601, 609-10 (9th Cir. 1990) (quoting <u>Waller v. Georgia</u>, 467 U.S. 39, 46 (1984)).

Mr. Navarro's statements were made as a result of the coercive tactics employed by the agents. Unless and until the government demonstrates that these statements were made voluntarily, the statements may ***not*** be used ***for any purpose*** at trial.

//

//

//

## V.

## THE COURT SHOULD DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY

The indictment in the instant case was returned by the January 2007 grand jury. That grand jury was instructed on January 11, 2007. The instructions to the impaneled grand jury deviate from the instructions at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this district in several ways.[3] First, instructing grand jurors that their singular duty is to determine whether or not probable cause exists and that they have no right to decline to indict when the probable cause standard is satisfied. Second, instructing grand jurors of a non-existent prosecutorial duty to present exculpatory evidence. These instructions compounded by the erroneous instructions and comments to prospective grand jurors during *voir dire* of the grand jury panel, which immediately preceded the instructions. Therefore, the indictment should be dismissed.

## VI.

## THIS COURT SHOULD SUPPRESS ALL EVIDENCE BECAUSE IT WAS OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT

The agents in this case carried out an illegal stop, an illegal search, and an illegal arrest. They lacked reasonable suspicion to stop Mr. Navarro; their sole claim is that Mr. Navarro drove into a parking lot and Border Patrol agents later discovered a person in the parking lot who was unlawfully in the United States. Their warrantless arrest and search are presumptively unreasonable and the government has not shown that they were supported by probable cause. This court should suppress all evidence (including statements and evidence seized) arising from the illegal stop, arrest and search.[4]

//

//

---

[3] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam). If the Court or the government request further briefing on this issue, or the transcript from the grand jury proceedings, then it will be provided forthwith.

[4] At the very least, this Court should hold an evidentiary hearing to require the Government to prove reasonable suspicion to justify the stop.

**A.     Agents Had No Reasonable Suspicion to Stop the Vehicle.**

Temporary detention of individuals by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" within the meaning of the Fourth Amendment, and must be supported by at least reasonable suspicion. See Delaware v. Prouse, 440 U.S. 648, 653 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 556 (1976). The vehicle stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. See Terry v. Ohio, 392 U.S. 1 (1968). This is true in the context of roving border patrol stops such as that executed by Agents Vasquez, Diaz, Napoli, and Godreau. United States v. Brignoni-Ponce, 422 U.S. 873 (1975) (roving border patrol agents must have reasonable suspicion, based on specific and articulable facts, in order to initiate a stop).

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002). In the context of investigatory stops, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot...." Id. (internal quotations omitted). To sustain an officer's reasonable suspicion determination, this Court "must look at the 'totality of the circumstances' ... to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Id. Although an officer may rely upon "experience and specialized training to make inferences from and deductions about the cumulative information available" to him before he makes an investigatory stop, "an officer's reliance on a mere hunch is insufficient to justify [such] a stop...." Id., at 273-274 (internal quotations omitted).

**1.     "Mere propinquity" does not establish reasonable suspicion**

To constitute reasonable suspicion, the objective circumstances must demonstrate "a particularized and objective basis for suspecting *the particular person stopped* of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981); see also United States v. Berber-Tinoco, 510 F.3d 1083, 1087 (9th Cir. 2007) (citing Cortez). "Mere propinquity to others independently suspected of criminal activity" is not reason to invade an individual's fundamental Fourth Amendment rights. Ybarra v. Illinois, 444 U.S. 85, 91 (1979).

Ybarra is directly on point here. In Ybarra, agents had a warrant to search a bar and its bartender. Ybarra was a patron of the bar at the time of the search. Because he was in the bar, he was frisked. Heroin was discovered on his person. Id. at 88-89. The court found the frisk and subsequent search of Ybarra to be

1  unreasonable, holding that a "person's mere propinquity to others independently suspected of criminal activity

2  does not, without more, give rise to probable cause to search that person." Id. at 91. Even though the officers

3  had probable cause (and a warrant) to search the bar and the bartender, this did not provide them even with

4  reasonable suspicion to frisk Ybarra. Id. at 92. In short, "mere propinquity" to a person suspected of criminal

5  activity simply does not provide officers authority to disregard the Fourth Amendment's requirement of a

6  particularized and objective basis for suspicion as to *the person* upon whose rights the government intrudes.

7  Ybarra's requirement of more than mere proximity to individuals suspected of criminal activity has

8  been strongly reaffirmed by the Ninth Circuit. "It is insufficient to point to the defendant's mere proximity

9  to others independently suspected of criminal activity." United States v. Robertson, 833 F.2d 777, 783 (9th

10  Cir. 1987). In Robertson the defendant Steeprow was walking out of a house they had reason to believe was

11  a drug house. She was detained. However, Steeprow's "mere presence on the premises, without more, cannot

12  support an arrest of her under these circumstances." The court determined that Steeprow was arrested, not

13  merely detained, but the principle of Ybarra was strongly reaffirmed: mere propinquity—or proximity—to

14  people independently suspected of criminal activity is not suspicious. Id.

15  **2.    The totality of the circumstances fall far short of the reasonable suspicion standard**

16  Even if the "mere propinquity" to an individual who later turned out to be undocumented is *a* factor

17  that can be considered, there was not, under the totality of the circumstances, reasonable suspicion to stop Mr.

18  Navarro. The Arvizu case demonstrates how a Border Patrol agent properly formed reasonable suspicion to

19  perform an investigatory vehicle stop. 534 U.S. at 277. In Arvizu, the agent articulated the following facts:

20      1.    a magnetic sensor alerted the agent to the presence of a vehicle on an unpaved, seldom traveled road used by smugglers to avoid Border Patrol checkpoints, Arvizu, at 268;

21      2.    the sensor alert occurred during a change in shifts which would leave the area unpatrolled by the agents, Id.;

22      3.    the same sensor had detected a minivan using the same route several weeks before which resulted in a marijuana seizure, Id., at 269-270;

23      4.    a second sensor signal indicated to the agent that the vehicle had turned onto another unpaved road on a route commonly used to circumvent checkpoints, Id., at 270;

24      5.    when the agent intercepted the vehicle, it turned out to be a minivan, Id.;

25      6.    when the agent followed the minivan, he noted that the occupants, who appeared to be a family, behaved strangely, first ignoring him and then waving in a mechanical manner, Id., at 270-271;

26      7.    the agent could see the children's knees, which indicated that their feet rested on some cargo. Id., at 270;

27      8.    the van turned onto a third, even rougher unpaved road, away from any checkpoint, and away from any destination a family might want to reach for recreation, Id., at 271; and

28      9.    a radio check by the agent indicated that the minivan was registered to an address four miles from the international border in a neighborhood notorious for smuggling activity, Id., at 271.

08CR1278-DMS

As a result, the agent in <u>Arvizu</u> had reasonable suspicion to perform an investigatory stop of the minivan because he could:

> infer from his observations, his registration check, and his experience that ... [the minivan] had set out ... along a little-traveled route used by smugglers to avoid the ... checkpoint[s] ... at a time when officers would be leaving their ... shifts ... on unpaved and primitive roads.

<u>Arvizu</u>, 534 U.S. at 277.

In this case, however, the facts set forth by the Border Patrol agents who had an opportunity to view any suspicious activity are as follows:

> 1.    Mr. Navarro drove into a parking lot and Border Patrol agents later discovered a person in the parking lot who was unlawfully in the United States.

As noted above, Mr. Navarro's mere proximity to these individuals was not in and of itself suspicious. <u>Ybarra</u>, 444 U.S. at 91. A comparison between the facts of <u>Arvizu</u> and the facts that form the particularized and objective basis for suspecting legal wrongdoing in this case demonstrates that the agents had no reasonable suspicion to stop the car. In <u>Arvizu</u>, the agent had nine *independent*, *particularized*, and *objective* facts that gave them particular suspicion *of the individuals in the vehicle*. <u>See</u> <u>supra</u>. Thus, the Supreme Court found that the agent had a reasonable suspicion that the occupants of the van were engaged in criminal activity. In the case at bar the agents can muster *no* independent, objective fact that provides particularized suspicion of Mr. Navarro. <u>Cortez</u>, 449 U.S. at 417-18.

The facts indicate that Mr. Navarro was stopped because he drove into a parking lot and Border Patrol agents later discovered a person in the parking lot who was unlawfully in the United States. This provides neither particularized nor an objective basis for suspecting *Mr. Navarro* of criminal activity. <u>Id.</u>; <u>Berber-Tinoco</u>, 510 F.3d at 1087. There are no factors listed which—independently or together—would rise to reasonable suspicion to stop a vehicle. As no reasonable suspicion exists, the evidence must be suppressed under the Fourth Amendment.

**B.    <u>The Agents Lacked Probable Cause to Arrest Mr. Navarro.</u>**

Where an arrest is effectuated without a warrant, as in this case, it must be supported by probable cause. <u>United States v. Del Vizo</u>, 918 F.2d 821 (9th Cir. 1990). Probable cause exists when an officer has "reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had

1  committed or was committing an offense." United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th
2  Cir. 1988) (citations omitted).

3         If the court disagrees with Mr. Navarro contention that the government has failed to show by a
4  preponderance of the evidence that probable cause existed, he respectfully requests that the government prove
5  the reasonableness of the warrantless arrest at an evidentiary hearing at which Mr. Navarro can challenge the
6  sufficiency of the government's probable cause.

7  **C.    Agents Had No Probable Cause to Search the Vehicle.**

8         As with the arrest, under the totality of the circumstances, there was insufficient evidence to establish
9  probable cause to conduct a warrantless, nonconsensual search of the vehicle.  Accordingly, the Court must
10  suppress all evidence obtained pursuant to this unlawful search.  The vehicle was searched without a warrant.
11  That search is therefore presumptively unreasonable.  See United States v. Hawkins, 249 F.3d 867, 872 (9th
12  Cir. 2001).  It is the government's burden to demonstrate that its agents complied with the Fourth
13  Amendment.  See id.  Here, the agents baldly assert that they had probable cause to search the vehicle.  The
14  facts thus far indicated do not amount to probable cause, and thus suppression is warranted.  If the court is
15  disinclined to suppress the fruits of this presumptively unreasonable search, Mr. Navarro nevertheless
16  respectfully requests an evidentiary hearing on the issue of probable cause to search the vehicle.

17  **D.    All Evidence Seized as a Result of the Unlawful Stop, Unlawful Arrest and Unlawful Search
       Must Be Suppressed.**
18

19         All evidence seized pursuant to Mr. Navarro's unlawful stop, unlawful arrest and unlawful search
20  must be suppressed.  See United States v. Patzer, 277 F.3d 1080, 1086 (9th Cir. 2002) (reversing because,
21  since the defendant's arrest was unlawful, "[t]he evidence obtained after his arrest, including his own
22  statements, his passenger's statements, and the physical evidence found during the search of his vehicle, were
23  'fruit of the poisonous tree' and should have been suppressed by the district court"); see also Wong Sun v.
24  United States, 371 U.S. 471 (1963); Taylor v. Alabama, 457 U.S. 687, 694 (1982); Castillo v. De La Renta,
25  806 F.2d 1071, 1076 (9th Cir. 1989).  The suppression of evidence should include, but is not limited to, all
26  tangible evidence **and statements**.  See e.g., Wong Sun, 371 U.S. 47; Taylor v. Alabama, 457 U.S. at 694;
27  Patzer, 277 F.3d at 1080.  Therefore, this Court should suppress all evidence related to the invalid arrest and
28  invalid search.

## VII

### REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

As new information comes to light, the defense may find it necessary to file further motions. Therefore, defense counsel requests the opportunity to file further motions based upon information gained from discovery.

## VIII.

### CONCLUSION

For the reasons stated above, Mr. Navarro respectfully requests that this Court grant the foregoing motions.

Respectfully Submitted,


Dated: May 16, 2008                      */s/ Robert R. Henssler*
                                         ROBERT R. HENSSLER, JR.
                                         Federal Defenders of San Diego, Inc.
                                         225 Broadway, Suite 900
                                         San Diego, CA 92101-5030
                                         (619) 234-8467  (tel)
                                         (619) 687-2666  (fax)
                                         e-mail: Robert_Henssler@fd.org